December 11, 1905.

————O————

No. 3736.

Court of Appeal, Parish of Orleans.

R. R. DANCY, vs. HAYWARD, VICK & CO.

1. A broker who is carrying, for his principal, a contract for the

sale of a commodity for future delivery, and who has in his hands a cash margin sufficient to protect him far beyond the lowest price quoted in the market on a certain day for that commodity, cannot, against the protest of his principal, close out the contract on that day and at that price, on the fear, entertained by him, that the price will fall on that day to such an extent as to entail a loss beyond the amount of the margin in his hands, when it is not shown that the conditions existing at the moment the contract was closed out, were such as to justify that fear, and where, on the contrary, it is shown that it was unwarranted, as instantly the commodity was sold the price of such commodity rose and continued to augment from day to day thereafter.

2. If an agent insists upon acting and does act upon his own judgment, and against the protest of his principal in a matter in which the latter is concerned he must take the consequences of his judgment proving erroneous and entailing damage to his principal.

Appeal from Civil District Court, Division "C."

W. S. Parkerson, for Plaintiff and Appellee.

McCloskey & Benedict & E. H. Farrar, for Defendant and Appellant.

MOORE, J. Defendants are cotton brokers with whom the plaintiff had transactions concerning the buying and selling by the former, for the account of the latter, cotton for future delivery to the extent of 100 bales. The initial transaction was on the 25th January 1904, defendants, on that day, selling for account of plaintiff 100 bales for July delivery. Thence followed a series of buying and selling of "hedging" and of "margining," of profits and losses, with the result that upon the close of the market on Saturday Feby 6th 1904, plaintiff had to his credit, on the books of defendants, a balance of $870.00; that "deal," as the parties term transactions of this character, being closed.

On the following Monday, (Feby 8th,) plaintiff purchased for defendant's account, and as per his instructions, 100 bales "July contract," at 13.96 cents. Upon the close of the market on Tuesday, (Feby 9th), prices had fallen to such an extent that plaintiff's credit balance of $870.00 had been reduced to $415.00; his 100 bales July contract at 13.96 cents still being carried.

On the morning of Wednesday Feby 10th, and within a few

minutes prior to the opening of the Cotton Exchange wherein these transactions were executed, the defendants demanded of plaintiff an additional margin or deposit of $750.00, threatening that if this deposit was not made at once, to "close him out" immediately the the exchange was opened; that is to say to sell the 100 bales at the opening figure or first call of the exchange, at 9.15 o'clock that morning.

Plaintiff protested against such action; pleaded for a delay until the opening of the banks at ten o'clock that morning, when, as the evidence shows, he could have gotten the amount demanded; and, finally, when this delay was denied him he instructed them to put in a "stop order," which means that the cotton be not sold until the price falls to a figure to be fixed and determined on between the parties and within the bounds and limits of the protection of the "margin" in the defendants hands. His protest was ignored; his request for delay until the opening of the banks refused and his instructions for a "stop order" ignored, and immediately at the first call of the exchange at 9.15 o'clock that morning he was "sold out" at 13 cents, that being still within $265.00 of a balance margin to his credit.

Within a few minutes after this deal was closed out, about 15 minutes thereafter, the market began to rise, closing on that day at 13.79 cents, and, though subjected to much fluctuation during the period of trading, the price never fell again to 13 cents, at which figure it was at first called when plaintiff was sold out.

On the following day, Thursday., Feby. 11th, the price rose from 13:79, at which it closed on the day previous to 14:80 cents, the price at which is shown plaintiff could and would have sold the cotton.

If the cotton had not been sold out, over the protest of plaintiff, at the time it was and had been sold at the time plaintiff would have directed it to be sold, the latter's profit would have been $900.00, less a charge of $10.00 for brokerage, leaving him a net profit of $890.00. It is for this latter amount plaintiff seeks to hold defendants responsible.

The sole defense set up by the answer to plaintiff's petition is that there existed a distinct and definite understanding and agree-

ment between the parties to the transaction that plaintiff was, at all times during the continuance of his dealings with defendants in these transactions, to deposit with defendants and to maintain in their hands a margin of $750.00 in cash for every 100 bales transaction so as to protect them against any loss which might result from a fluctuation of prices; that the maintenance of this margin was the condition precedent to defendant's obligation to keep open the transaction and to abide plaintiff's will and pleasure as to the period of "closing out"; that as the plaintiff had not maintained that margin on the opening of the market on the morning of Wednesday, the 10th of February, and had, when requested to put it up, failed so to do, they were at liberty under the terms of this agreement as well as by the custom of the trade to at once sell out the cotton and close the account, and that they did so, with the result stated.

This defense would unquestionably defeat plaintiff's right to recover if it were sustained by proof. But it is not. On the contrary, the defendants themselves, when testifying in the cause, admit that no such understanding or agreement existed.

The excuse which they assign in their testimony for their action in closing out the transaction was that arriving at their office early on the morning of Feby. 10th and being then advised of the condition of the Liverpool market, which showed a decline, they resolved to close out all "small accounts," among which they classed plaitiff's account, unless more margins were obtained, that as plaintiff did not put up any more margin, (he then had up a margin of $415.00) they, therefore, closed out his account at the first figure at which the market opened.

It does not appear that any other "small account on defendant's books, which were similarly conditioned to plaintiff's account, was closed out by failure to put up an additional margin, nor is it shown to what figure defendants had reason to believe, and did believe, the New Orleans market would drop, except that, as testified by defendant's marginal clerk: "We figured on the market opening lower than it did."

In our opinion, the reason assigned for their action does not relieve them.

If an agent insists upon acting on his own judgment and against the wishes and protest of his principal in a matter in which the latter is concerned he must take the consequences of his judgment proving erroneous.

If action based thereon should be prejudicial to the interest of his principal the agent is responsible for all loss thus occasioned.

There was no necessity for the precipitancy of action which characterized the closing out of this account. The evidence does not disclose that any one in this line of business, save the defendants, had reason to believe and did believe that the market would drop below 12:47 per cent. to which point the plaintiff was margined up. Under the maxim of the law to the effect that "what is not proven does not exist," we say that no one else but the defendants, entertained any such belief.

Here it will be perceived that although the market for "July contracts" opened on the morning of Feb. 10th, 96 points lower than the price paid by plaintiff two days previously for July delivery, nevertheless there yet remained in defendants hands after the 13 cents mark was reached, and at which price the cotton was sold, a sum sufficient to protect defendants to the extent of a still further fall of 53 points.

No evidence has been adduced to show warrant or justification for a reasonable belief that upon the opening of the market, at thirteen cents, on the morning, of February 10th, a further decline was probable from the existing conditions or was generally anticipated, or that if such decline was probable, or was generally anticipated, the decline would necessarily be so sudden and rapid that this contract could not have been closed out at a figure within the protection of the margin; nor is it even shown that *at the opening* of the market that day, the defendants, influenced either by the then existing conditions or by the general belief that the market would decline below the opening quotation, (13 c), entertained any belief that the drop would be greater. Nothing transpired *at the opening* of the market to influence them in this matter. They had resolved before the market opened to close out the account upon the opening of the market; they "figured on the market opening lower than it did." But notwithstanding the market opened above what they "figured" it

made no change in their resolution formed *before* the market opened. As we have stated the price never went below 13 cents, nor did it remain there beyond the "first call," then it began to rise and finally reached 14:80.

We think the case is entirely with the plaintiff, and so thought our esteemed brother of the lower Court who gave judgment in his favor for the amount sued for.

The judgment is affirmed.

December 11, 1905.

## ON REHEARING.

Plaintiff's proof is lacking in a material matter, but under the principle, repeatedly affirmed by appellate courts, that where it appears that proof exists material to the issue but not furnished from misapprehension or other cause not implying a desire to withhold the proof or gross neglect on the part of the litigant, the cause, in furtherance of justice will be remanded, we remand this cause for further trial according to the views herein expressed.

MOORE, J. A re-examination of this case has satisfied us that there is no evidence in the record to show that the market price of cotton advanced to 14.80/100 cents on the 11th of Feb. 1904, the day on which and the price at which the plaintiff alleges "the cotton could and would have been sold," and which price was made the basis of our former decree.

The nearest approach to the proof of the price of cotton on that day is found in the question propounded to the plaintiff when he was testifying in the cause. and his answer thereto, which was as follows.

Q. "You allege in your petition that on the 11th day of February the market advanced to 14.80, and would you have been willing to sell at that price?

A. Yes, sir.

This by no means, established the price of cotton on that day.

Indeed it is not even made reasonably certain that the plaintiff intended to close out the "deal" on the 11th of Feb. at all for when asked "what day were you supposed to close when this cal-

culation was made at eight hundred and odd dollars? Was it the 11th, the 12th or the 13th, or what day was it?" he answered. "I don't know as I could tell you the exact date; anyhow, it was about two days afterwards."

This is no such proof as warrants the judgment rendered.

On the original hearing this insufficiency of proof was not called to our attention forasmuch as the defendants and appellants submitted neither oral nor printed arguments. We, therefore, assumed that there was no dispute to this matter and did not scrutinize the record in this particular as we should have done.

Our error was made manifest on reargument on rehearing.

The plaintiff, on the face of his petition, is entitled to a judgment for some amount against the defendant and his counsel was in good faith in believing that he had actually proven his case. "Where," said the court in Calder vs. Calder, 48 A. 1538," it is apparent the proof exists material to the issue, but not furnished from misapprehension or other cause not implying any design to withhold the proof, or gross neglect on the part of the litigant, in such cases, in furtherance of justice, the Court, reluctant to dispose of the controversy on an imperfect record, will remand the cause."

This cause clearly falls within the foregoing principle, and we think that the plaintiff should be afforded reasonable opportunity to furnish further and competent evidence.

It is therefore ordered, adjudged and decreed that our former opinion and decree be recalled avoided and set aside, and it is further ordered adjudged and decreed that the judgment appealed from be and the same is hereby avoided set aside and reversed and the cause remanded to be proceeded with in accordance with the opinion herein; the costs of appeal to be taxed against the appellee and all other costs to await the final determination of the cause.